UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

2:26-cv-339

FAITH M. COVEY,
Plaintiff,
v.
WASHINGTON COUNTY MENTAL HEALTH SERVICES (WCMHS);
CENTRAL VERMONT MEDICAL CENTER (CVMC);
VERMONT AGENCY OF HUMAN SERVICES (AHS);
DEPARTMENT OF MENTAL HEALTH (DMH);
DEPARTMENT OF DISABILITIES, AGING AND INDEPENDENT LIVING (DAIL);
VERMONT HUMAN SERVICES BOARD;
OFFICE OF PROFESSIONAL REGULATION;
BARRE HOUSING AUTHORITY;
MONTPELIER HOUSING AUTHORITY;
and STATE-FUNDED ADVOCACY & SUPPORT NETWORK ENTITIES,
Defendants.

Case No. [To be assigned by Clerk]

VERIFIED PETITION FOR WRIT OF MANDAMUS, EMERGENCY INJUNCTIVE RELIEF, AND CIVIL RIGHTS ENFORCEMENT UNDER 42 U.S.C. § 1983 AND TITLE II OF THE AMERICANS WITH DISABILITIES ACT

---

## I. PRELIMINARY STATEMENT & THE SCOPE OF THE WRONG

1. Plaintiff Faith M. Covey brings this action not merely to redress administrative oversights, but to expose and dismantle a fourteen-year continuous pattern of institutional bad faith, systemic retaliation, and civil rights violations under color of state law.

2. For fourteen years, Defendants—operating across a coordinated network of state agencies, mental health providers, housing authorities, and co-opted advocacy groups—promised a safety net to a vulnerable adult recovering from severe trauma. Instead, Defendants systematically harvested Plaintiff's neurological and sensory profile data, suppressed diagnostic testing (including Dr. Black's 2019 findings), engineered sensory-overload referral traps, and weaponized Plaintiff's neurodivergent dysregulation and survival boundaries as false evidence of "non-compliance."

3. When Plaintiff exercised her fundamental right to question institutional abuses, seek the truth, and demand accountability, Defendants retaliated by manufacturing housing precarity, withholding life-sustaining endocrine care, purging investigative audio records (OPR Case

C-2025-8269), and locking Plaintiff behind an impenetrable wall of bad-faith administrative technicality dismissals.

4. Plaintiff was systematically denied the most foundational right of a human being and a patient: informed consent. By concealing the true nature of their administrative operations and treating a disabled individual's survival instincts as a threat to institutional liability, Defendants inflicted severe, irreversible physical, cognitive, and psychological damage.

5. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and this Court's mandamus authority to pierce the administrative cover-up, restore her civil rights, secure her medical and housing continuity, and ensure that judicial light is finally shined on systemic practices that must never be permitted to destroy another human life.

—

II. PARTIES

1. Plaintiff FAITH M. COVEY is an individual residing in Barre, Vermont, who is a qualified individual with disabilities under the Americans with Disabilities Act and a survivor of systemic institutional retaliation.

2. Defendant WASHINGTON COUNTY MENTAL HEALTH SERVICES (WCMHS) is a designated local mental health agency operating under color of state law within Washington County, Vermont, responsible for direct service provision, case management, and the implementation of systemic barriers and retaliatory medical and administrative actions against Plaintiff.

3. Defendant CENTRAL VERMONT MEDICAL CENTER (CVMC) is a regional medical hospital facility operating within Vermont, responsible for acute care management, suppression of patient records, and participating in medical abandonment protocols.

4. Defendant VERMONT AGENCY OF HUMAN SERVICES (AHS) is an umbrella agency of the State of Vermont overseeing human services administration, state health policy, and administrative tribunals.

5. Defendant DEPARTMENT OF MENTAL HEALTH (DMH) is a primary operational department of the Vermont Agency of Human Services, legally responsible for public mental health oversight, systemic service compliance, and statutory duties regarding mental health evaluations and care mandates.

6. Defendant DEPARTMENT OF DISABILITIES, AGING AND INDEPENDENT LIVING (DAIL) is a primary operational department of the Vermont Agency of Human Services (incorporating adult services, Choices for Care, and related moderate needs home care programs

administered via Dale), legally responsible for ensuring that individuals with disabilities are provided mandatory community-based services and accommodations.

7. Defendant VERMONT HUMAN SERVICES BOARD is an administrative quasi-judicial board operating under the State of Vermont, utilized as an institutional gatekeeper executing bad-faith procedural technicality dismissals and failing to enforce compliance.

8. Defendant OFFICE OF PROFESSIONAL REGULATION (OPR) is a division of the Vermont Secretary of State's office, responsible for professional oversight, investigative accountability, and the administrative unit wherein evidence spoliation (Case C-2025-8269) occurred.

9. Defendant BARRE HOUSING AUTHORITY is a co-opted institutional housing gatekeeper utilizing housing precarity and displacement as leverage and retaliation.

10. Defendant MONTPELIER HOUSING AUTHORITY / SECTION 8 is an instrumentality executing discriminatory housing barriers and administrative chokeholds.

11. Defendants STATE-FUNDED ADVOCACY & SUPPORT NETWORK ENTITIES (Including Disability Rights Vermont, Vermont Center for Independent Living, and Vermont Health Care Advocates / MAD Advocates) are named as respondents and material parties whose internal processes were utilized as administrative gatekeepers, co-opted channels, or data-gathering funnels rather than independent protections for Plaintiff due to systemic state-level co-optation.

—

III. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States, including Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.), Section 504 of the Rehabilitation Act (29 U.S.C. § 794), and 42 U.S.C. § 1983.

2. This Court has mandamus jurisdiction pursuant to 28 U.S.C. § 1361 to compel officers, agencies, and state-funded instrumentalities of the United States and State of Vermont to perform their clear legal and constitutional duties.

3. Venue is proper in the District of Vermont pursuant to 28 U.S.C. § 1391(b), as all events giving rise to these claims occurred within Barre, Vermont, and the District of Vermont.

—

IV. FACTUAL ALLEGATIONS: THE FOURTEEN-YEAR CONTINUOUS PATTERN (2012–2026)

A. Era I: The 2012 Trauma Genesis and Institutional Exploitation

1. In 2012, following a severe trauma trigger and complex PTSD that resulted in a three-month intensive hospitalization where Plaintiff lost the ability to speak and was nearly abandoned to the state hospital system, Plaintiff survived through sheer resilience, supported by a singular dedicated doctor and social worker.
2. The medical and psychological records generated during this acute vulnerability were subsequently seized upon by Washington County mental health structures. Rather than honoring statutory mandates of care, Defendants utilized Plaintiff's trauma history as a baseline of manufactured vulnerability to protect institutional liability.

B. Era II: The Cover-Your-Ass Apparatus and Suppressed Realities (2013–2017)
3. By 2017, Plaintiff recognized that institutional oversight was operating in bad faith. During a psychiatric hospitalization, Plaintiff's trauma disclosures were forcibly suppressed by staff who refused to document institutional maltreatment, instead manufacturing false behavioral records to pre-emptively discount Plaintiff's credibility.

C. Era III: The 2018 Medical Abandonment, 2019 Dr. Black Testing, and Systemic Retaliation
4. In 2018, systemic obstruction culminated in a severe medical crisis wherein Plaintiff's designated care team left Plaintiff completely unresponsive and abandoned for six consecutive days.
5. In 2019, diagnostic testing administered by Dr. Black clearly established foundational markers of neurodivergence and cognitive/executive functioning profiles. However, WCMHS and Plaintiff's assigned team actively suppressed and ignored Dr. Black's findings to avoid providing mandatory ADA accommodations and to maintain their weaponized narrative of "personality disorder."

D. Era IV: The 2021 Coerced Fair Hearing Waiver (Docket M-05/21-324)
6. The physical and mobility decline resulting from medical abandonment forced Plaintiff to seek Choices for Care (CFC) and home care through AHS and DAIL.
7. When essential supports were denied, Plaintiff filed for a State Fair Hearing (Docket No. M-05/21-324). Concurrently, the state leveraged a manufactured $2,174 SSA overpayment crisis, creating acute economic duress. Under this coercion, Plaintiff was forced into mediation where the hearing request was marked "withdrawn," illegally extracting a waiver of trial and due process rights.

E. Era V: Engineered Collapse, Evidence Spoliation, and Present Abandonment (2024–2026)
8. In April 2024, Plaintiff's gynecology specialist went on maternity leave, triggering an unmanaged endocrine crash. Defendants intentionally withheld essential prescriptions (*Veozah*, *Estradiol*) and weaponized Plaintiff's autistic burnout and sensory distress as "non-compliance."
9. In 2025, Defendants systematically purged care paths, leading to intentional evidence spoliation in Office of Professional Regulation (OPR) Case No. C-2025-8269 (erasure of seven audio recordings).
10. Despite hearing officers ordering compliance, Defendants ceased all communication, leaving Plaintiff without an assigned case manager, active contract, or life-sustaining care, while

maintaining a silent backdoor "red flag" file. Concurrent federal filings (DOJ #828550-RCQ, HHS OCR #696395, HUD OIG) have been met with bad-faith technicality dismissals.

F. Era VI: The Engineered Referral Failures and Weaponized Dysregulation
11. Knowing Plaintiff presented with unaccommodated neurodivergence, Defendants repeatedly referred Plaintiff to specialized programs (All Brains Vermont, TMS, Center for Trauma, Charlie Health, McLean Hospital) while intentionally attaching rigid, unaccommodated procedural hurdles. When Plaintiff's nervous system naturally dysregulated, Defendants allowed paperwork to lapse and rebranded neurodivergent dysregulation as "patient non-compliance."

G. Era VII: The Data-Harvesting Grant Study and Sensory Traps
12. Defendants enrolled Plaintiff in grant-funded research studies focused on auditory processing and sensory needs. Rather than providing ADA accommodations, Defendants weaponized this data to design unaccommodated sensory-overload interventions, recording predictable dysregulation as unprovoked "decline."

H. Era VIII: The Neutralization of Safety Nets and Systemic Isolation
13. Due to the pervasive administrative dominance of AHS, DMH, DAIL, and WCMHS, independent networks (DRVT, VCIL, CVCOA, housing authorities, advocates) were co-opted or neutralized, functioning as administrative funnels rather than independent protections, leaving Plaintiff entirely isolated.

---

V. CAUSES OF ACTION

* COUNT I: Violation of Title II of the Americans with Disabilities Act & Section 504
*(Systemic failure to accommodate neurodivergence; suppression of Dr. Black's 2019 testing; weaponizing trauma responses; retaliatory medical denial).*

* COUNT II: Deprivation of Due Process under 42 U.S.C. § 1983
*(Coerced waivers, bad-faith procedural technicality dismissals, and suppression of administrative records including OPR audio spoliation in Case C-2025-8269).*

* COUNT III: Petition for Writ of Mandamus
*(Compelling administrative, municipal, and state/federal bodies to properly adjudicate pending files DOJ #828550-RCQ and HHS OCR #696395 and review the complete 2012–2026 record without arbitrary technicality evasion).*

---

VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue an Alternative Writ of Mandamus commanding Defendants to cease administrative evasion and produce a full, uncorrupted administrative record of all grievances, medical files, grant studies, Dr. Black's 2019 psychological testing, and hearing transcripts from 2012 to the present.
B. Enter Preliminary and Permanent Injunctive Relief barring any retaliatory interference with Plaintiff's housing, medical care, or civil rights.
C. Declare that all prior waivers or dismissals extracted under economic duress, fraud in the inducement, or concealment of evidence (including Docket M-05/21-324) are null, void, and legally vacated.
D. Award such further relief as this Court deems just, equitable, and necessary to secure Plaintiff's constitutional rights.

—

Respectfully submitted this 5th day of September, 2026,

/s/ Faith M. Covey Faith Covey
Faith M. Covey, Pro Se
Barre, Vermont
Phone: 802-461-9075